**BODENHAMER BUILDING CORPORATION, Plaintiff–Appellee,**

v.

**ARCHITECTURAL RESEARCH CORPORATION; American Standards Testing Bureau, Inc.; and Ar–Lite Panelcraft, Inc., Defendants–Appellants.**

Nos. 86–2078, 87–1269.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 7, 1988.

Decided April 21, 1989.

Thomas S. Shore, Jr. (argued) Rendigs, Fry, Keily & Dennis, W. Breck Weigel, Cincinnati, Ohio, William M. Saxton, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants-appellants.

Charles D. Bavol (argued), Detroit, Mich., for plaintiff-appellee.

Before: ENGEL, Chief Judge,* RYAN, Circuit Judge, and PORTER,** Senior District Judge.

ENGEL, Chief Judge.

In this diversity case, appellants American Standards Testing Bureau (ASTB), Architectural Research Corporation (ARC), and Ar–Lite Panelcraft Inc. (API) appeal the judgment of the United States District Court for the Eastern District of Michigan imposing damages in the amount of $51,069.75, for disregarding the corporate entity and violating both the Michigan Fraudulent Conveyance Act and the Michigan Bulk Sales Act. Appellants also challenge the district court's award of $77,795.75 for appellee's attorney fees and costs under Fed.R.Civ.P. 11. We affirm the damage award, but vacate the award of Rule 11 sanctions and remand for further proceedings with respect to that issue.

Bodenhamer Building Corporation (Bodenhamer) is a Georgia corporation with its principal place of business in Georgia. In 1978, Bodenhamer, a general contractor on a construction project, subcontracted with ARC for a supply of pre-cast polymer concrete panels. At the time it entered the subcontract with Bodenhamer, ARC was a wholly-owned corporate subsidiary of ASTB, a Delaware corporation with its principal place of business in New York. Vassilis Morfopolous, 100% shareholder and Chief Executive Officer of ASTB, acquired controlling interest in ARC in 1977 and became ARC's Chief Executive Officer in 1979, when ASTB acquired 100% ownership of ARC.

On June 12, 1980, ASTB and ARC executed a revolving loan agreement whereby: ASTB loaned money to ARC, payable upon demand by ASTB; ARC granted ASTB the right to collect ARC's accounts receivable; and ARC gave ASTB a security interest in "Any and all personal property of whatever nature, kind and description, including but not limited to, equipment, fixtures, inventory, patents, stock, assets and accounts receivable." On June 25, 1980, ASTB filed a corresponding financing statement.

After ARC failed to discharge its subcontract with Bodenhamer, Bodenhamer sued ARC in the United States District Court for the Southern District of Georgia seeking damages for breach of contract; on October 14, 1982 Bodenhamer received a $49,633.66 judgment against ARC. Before the judgment, Elliott Winograd, the corporate attorney for ASTB, informed Carl Lukens, another ASTB employee, that if Bodenhamer won its suit, ASTB would declare ARC in default on the revolving loan and foreclose on the loan in order to prevent Bodenhamer from executing any judgment. After Bodenhamer received judgment, ASTB filed claim and delivery actions to foreclose on its lien and to enforce its security interest in ARC's property; appropriate orders were subsequently entered for ASTB by

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

** The Honorable David S. Porter, United States District Court for the Southern District of Ohio, sitting by designation, participated in oral argument but, due to his untimely death on January 5, 1989, took no part in the opinion.

the Wayne County, Michigan, Circuit Court.

To satisfy ASTB's lien against ARC, a November 4, 1982 auction sale of ARC's assets was conducted on the premises of ARC. Winograd, Lukens, Morfopolous and representatives of one of defendants' competitors, Lone Star Polymer Concrete Company, were the only ones present. The only bid submitted was that of ASTB in the amount of $115,000, conveyed through Lukens. ASTB thereupon took possession of ARC's assets, leaving $92,796.22 in unsecured and unpaid debt still owed by ARC to Bodenhamer and others. Although remaining in existence after the sale of its assets, ARC ceased operations, and ASTB leased the foreclosed assets to another wholly owned subsidiary, Ar–Lite Panelcraft, Inc. (API), which occupied the premises previously used by ARC. The evidence is clear that ASTB incorporated API in the State of Delaware in October 1982 in order to continue manufacturing Ar–Lite panels if Bodenhamer were to receive judgment against ARC in the Georgia lawsuit.

The auction having frustrated its efforts to collect its Georgia judgment, Bodenhamer certified the judgment for purposes of collection in the United States District Court for the Eastern District of Michigan on December 27, 1982. On May 16, 1983, Bodenhamer filed a complaint charging defendants ARC, ASTB and API with disregard of the corporate entity of ARC, and violation of both the Michigan Fraudulent Conveyance Act, Mich.Comp.Laws Ann. § 566.11 *et seq.*, and the Michigan Bulk Transfer Act, Mich.Comp.Laws Ann. § 440.6101 *et seq.* Defendants answered the complaint on June 22, 1983 and filed a counterclaim against both Bodenhamer and its owner, Douglas Bodenhamer, alleging abuse of process and conspiracy.

On August 27, 1986, the case proceeded to a jury trial on the fraudulent conveyance issue and to a bench trial on the disregard of the corporate entity and bulk sales issues. The jury found in favor of Bodenhamer on the fraudulent conveyance issue, and shortly thereafter, the trial court filed a written opinion ruling in favor of Boden-

hamer on the disregard of the corporate entity and bulk sales issues. On October 15, 1986, a $51,069.75 judgment was entered for Bodenhamer. The court also held that Bodenhamer was entitled to Rule 11 sanctions. After Bodenhamer submitted a list of costs and attorneys fees to the court, the court issued an order awarding Bodenhamer $77,795.75 in Rule 11 sanctions, and entered judgment on February 3, 1987. ARC, ASTB and API filed joint notices of appeal on both judgments and we ordered the appeals consolidated.

### I.

In a carefully crafted opinion, filed on October 3, 1986, United States District Judge Lawrence P. Zatkoff held that ARC, ASTB and API had abused the corporate form. Judge Zatkoff's extensive findings on this issue are fully supported by the evidence and consistent with the specific findings of the jury which heard and decided the fraudulent conveyance issue.

"[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." *Wodogaza v. H & R Terminals*, 411 N.W.2d 850, 852 (Mich.App.1984). *See Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 364 N.W.2d 670, 674 (1984) (courts will ignore fiction of corporate existence if invoked to subvert justice); *Allstate Insurance Co. v. Citizens Insurance Co.*, 118 Mich.App. 594, 325 N.W.2d 505 (1982); *Wechsler v. Aetna Life Ins. Co.*, 83 Mich.App. 320, 268 N.W.2d 394 (1978). "[F]raud or other attempts to evade the law justify invoking equity's power to look through and behind the legal entity of corporate existence." *Klager v. Robert Meyer Co.*, 415 Mich. 402, 329 N.W.2d 721, 725 (1982) (quoting *Gledhill v. Fisher & Co.*, 272 Mich. 353, 262 N.W. 371 (1935)), "The entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Klager*, 329 N.W.2d at 725. Each case must be decided on its own facts.

*Lettinga v. Agristor Credit Corp.*, 686 F.2d 442, 446 (6th Cir.1982).

If separate corporate entities are employed and incorporated to perpetuate a fraud, the court may consider them a single legal entity. *U.S. v. Certain Parcel of Land in Wayne County, Michigan*, 466 F.2d 1295, 1297 (6th Cir.1972) (per curiam); *Choate v. Landis Tool Co.*, 486 F.Supp. 774, 775 (E.D.Mich.1980). A court may find an identity between business entities and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another entity or individual; second, the corporate entity must be used to commit a fraud or wrong; third, there must have been an unjust loss or injury to the plaintiff. *Nogueras v. Maisel & Assoc.*, 142 Mich.App. 71, 369 N.W.2d 492 (1985); *Maki v. Copper Range Co.*, 121 Mich.App. 518, 524–25, 328 N.W.2d 430 (1982) (per curiam) *lv. den.* 417 Mich. 1030 (1983). *Cf. Action Plumbing & Heating Co. v. Jared Builders, Inc.*, 368 Mich. 626, 118 N.W.2d 956 (1962) (parent corporation held liable for acts of subsidiary after exercising undue domination over subsidiary to defraud complainant and causing unjust loss or injury). Further, as Judge Zatkoff acknowledged in his opinion, the corporate veil may be pierced when, as he characterized it: (a) a corporation and shareholders have complete identity of interests; (b) the corporation is a mere instrumentality of the shareholders; (c) the corporation is a device to avoid a legal obligation; or (d) the corporation is used to defeat public convenience, justify a wrong, protect fraud or defend a crime. *See Kline v. Kline*, 104 Mich.App. 700, 305 N.W.2d 297 (1981); *Williams v. American Title Insurance Co.*, 83 Mich.App. 686, 269 N.W. 2d 481 (1978).

■ The evidence and Judge Zatkoff's specific findings clearly support his conclusion that it was proper to pierce the corporate veils of ARC and API. In support of his findings that ARC and API were mere instrumentalities of ASTB, Judge Zatkoff noted that the officers of the corporations were exactly the same, and that Morfopolous, who used his control of ASTB to finance and control the corporate books for ARC and API, ran all of the businesses. Judge Zatkoff further found that API was an alter-ego of ARC, having used the auction to acquire ARC's assets and employees, the address and equipment formerly possessed by ARC, and ARC's accounts receivable and back log orders. As to the latter, he found that Morfopolous paid no consideration for their acquisition. He further found that various ASTB employees specifically intended to defraud Bodenhamer and to prevent Bodenhamer from collecting its judgment by employing what he characterized as a "fraudulent shell game." The trial judge therefore found that ASTB, ARC and API had deliberately defrauded creditors, including Bodenhamer, with Bodenhamer being damaged in the amount of the Georgia judgment, plus interest. We believe that this holding was appropriate.

■ Likewise, the jury's determination that the defendants had been guilty of a violation of Michigan's Uniform Fraudulent Conveyance Act was fully supported by the evidence.[1] Michigan's Uniform Fraudulent Conveyance Act, Mich.Comp.Laws Ann. § 566.11 *et seq.*, provides:

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors dur-

---

1. The jury answered affirmatively to each of the following questions:

"Was the revolving loan agreement between ASTB and ARC, dated June 19, 1980, created with the actual intent to defraud present or future creditors?" and "Was the November 4, 1982 auction, sale and transfer of ARC's assets to ASTB made with the actual intent to defraud present or future creditors?"

The jury answered negatively the following question:

"At the November 4, 1982 auction, sale and transfer of ARC's assets did ASTB give fair consideration for the assets transferred to ASTB?"

ing the continuance of such business or transaction without regard to his actual intent.

Mich.Comp.Laws Ann. § 566.15.

Under Mich.Comp.Laws Ann. § 566.13:

Fair consideration is given for property, or obligation; (a) When exchange for such property, or obligation, is a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

Under this section, a plaintiff must prove actual intent to defraud and lack of fair consideration. *Dean v. Torrence,* 299 Mich. 24, 299 N.W. 793 (1941). "[E]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Mich.Comp.Laws Ann. § 566.17. Any creditor whose claim has matured, as in this case, may have such a transfer set aside or obligation annulled to the extent necessary to satisfy his claim, or disregard the conveyance and attach or levy execution upon the property conveyed. Mich.Comp.Laws Ann. § 566.19. Moreover, section 566.221 provides:

Every conveyance or assignment, in writing or otherwise, of any estate or interests in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and any charge upon lands, goods or things in action, or upon the rents or profits thereof, made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree judgment suffered, with the like intent, against the person so hindered, delayed or defrauded, shall be void.

**2.** Given our holding, we need not address the trial judge's alternative finding of liability under

The question of fraudulent intent, in all cases arising under Mich.Comp.Laws Ann. § 566.101 *et seq.* is a question of fact and not of law. Mich.Comp.Laws Ann. § 566.224.

On its verdict form, the jury specifically held that ASTB did not give fair consideration for the assets transferred, that the revolving loan agreement between ASTB and ARC was created with the actual intent to defraud present and future creditors, and that the auction sale and transfer of ARC's assets to ASTB was made with actual intent to defraud present or future creditors. Substantial evidence supports the jury's conclusion that the auction was a fraudulent conveyance by ARC to ASTB.

There is clear evidence that officers of ARC and ASTB were the same, that the auction had been manipulated by ARC and ASTB, and that ASTB was aware of Bodenhamer's outstanding judgment. Based on this evidence, the jury could have found that ARC and ASTB intended to fraudulently convey the assets of ARC to ASTB through the auction. Moreover, there is evidence that the $115,000 paid for ARC assets at the auction was considerably less than previous purchase offers of $2.2 million, $1.4 million and $1 million and earlier estimates that ARC's assets were worth anywhere from $345,000 to upwards of $600,000. Thus, we have no difficulty in affirming the jury's finding of liability under the Fraudulent Conveyance Act.

Accordingly, because the findings of Judge Zatkoff and the jury fully support the damage award and judgment thereon, we affirm the judgment of the district court awarding Bodenhamer $51,069.75 in damages.[2]

## II.

■ When he rendered his opinion on the merits, Judge Zatkoff also determined that Bodenhamer was entitled to Rule 11 sanctions against all three defendants. In assessing sanctions against the defendants but not against defendants' trial counsel, Judge Zatkoff found:

Michigan's Uniform Bulk Transfer Act, Mich. Comp.Laws Ann. § 440.6101 *et seq.*

3. ARC, ASTB, and API had filed a counter-claim against Bodenhamer Building Corporation and Mr. Bodenhamer personally. Mr. Bodenhamer was personally dismissed early in the case and the rest of the counter-claim was dismissed in the final pre-trial order. Defendants have never prosecuted the issues contained in the counter-claim.

4. The court also notes that the manner of defense in this case was well below professional standards. Defendants failed to offer credible witnesses and the entire defense of the case was offered merely to require the plaintiff to expend enough money so as to prevent further prosecution of plaintiff's claims. It is unbeknownest [sic] to this court why the defendants continually delayed its defense of this case.

5. For the foregoing reasons, this Court is imposing Rule 11 sanctions against the Defendants ASTB, ARC and API. The Court is not imposing sanctions on their counsel, Mr. Eric Linden. This Court denied Mr. Linden's motion to withdraw as the attorney for the Defendants. The Court finds that Mr. Linden at all times ably and professionally represented his clients. It was obvious to the court that Mr. Linden's entire defense was completely controlled by ASTB, ARC and API. It appeared at times that Mr. Linden never knew who his witnesses were going to be nor what proofs he was going to offer. Instead the entire case was run and handled by ASTB.

He thereupon directed that attorney fees and costs be imposed against the three defendant corporations and directed plaintiff's counsel to submit a detailed listing of costs, attorney hours spent and fees incurred in prosecuting this action. Subsequently, the court issued its order awarding Bodenhamer $77,795.75, an amount corresponding to the calculations submitted by plaintiff's counsel. In assessing sanctions, the trial judge relied entirely upon Rule 11

and not upon the broader language of 28 U.S.C. § 1927 which relates to vexatious conduct as opposed to vexatious pleading.[3] Therefore, confining our consideration to the propriety of the award under Rule 11 as we must, we conclude that the court's findings were insufficient to support an award covering all attorney's fees and expenses incurred throughout the litigation. Accordingly, we vacate that award.

Fed.R.Civ.P. 11 explicitly confers upon a federal court the authority to impose fines or sanctions when a party has filed a frivolous pleading which is "interposed for any improper purpose, such as to harass, or to cause delay or needlessly increase the cost of litigation." When a pleading is signed and filed in violation of Rule 11, "the court ... shall impose upon the person who signed [the pleading], a representative party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred *because of* the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R. Civ.P. 11 (emphasis supplied).

Thus, before a district court awards an attorney fee, Rule 11 requires a finding that the recoverable fee was induced by the filing of the sanctionable pleading. "[A] district judge faced with a sanction motion must make certain findings determining that an award is appropriate. Careful analysis and discrete findings are required, no matter how exasperating the case." *In Re Ruben,* 825 F.2d 977, 990–91 (6th Cir. 1987). Although the court implied that the counterclaim against Douglas Bodenhamer and Bodenhamer Building Corporation was entirely unjustified, neither the data submitted nor the findings of the court indicate how any particular pleading, motion, or paper relates to any particular expense or attorney fee. We therefore must vacate the award of attorney fees.

---

**3.** 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexa-

tiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

At the same time, we are loath to deny recovery of attorney fees altogether, and therefore think it appropriate to remand the case for a rehearing concerning the alleged violation of Rule 11. To this end we call attention to recent cases of this court which we think will be of particular assistance: *Century Products v. Sutter,* 837 F.2d 247 (6th Cir.1988); *Smith v. Detroit Federation of Teachers, Local 231,* 829 F.2d 1370 (6th Cir.1987); *In Re Ruben,* 825 F.2d 977 (6th Cir.1987); *INVST Financial Group v. Chem–Nuclear Systems,* 815 F.2d 391 (6th Cir.1987); *Albright v. Upjohn Company,* 788 F.2d 1217 (6th Cir. 1986). As far as we can tell at this point, but without restricting the further inquiry by the district court on remand, costs which might be recoverable include only those involving the defendants' counterclaim which was never pursued and found meritless by the court.

We are very sympathetic with the view expressed by the District of Columbia Circuit that "sanction proceedings should not be allowed to bloom into protracted satellite litigation." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1179 (D.C.Cir.1985). Moreover, we acknowledge the Advisory Committee's observations that: "The new language is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions," and that "greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11 advisory committee note. Given our obligation to remand here and the various disputes arising in the Sixth Circuit, perhaps the Advisory Committee was overly sanguine that streamlining sanction procedures and simplifying the language of Rule 11 would eliminate attorney abuses, simplify sanction proceedings and make sanctions more easily obtainable. In practice, however, this objective still appears to be eluding the bench and bar; we can only suggest at this juncture that trial judges carefully read not only the exact language of Rule 11 but that they thoroughly familiarize themselves with the Advisory Committee's notes.

Accordingly, we AFFIRM the judgment rendered in favor of the plaintiffs and against the defendant for damages in full but we REVERSE on the postjudgment order for the award of attorney fees, VACATE that order and REMAND for further proceedings consistent herewith.