983 F.2d 1071
 16 Employee Benefits Cas. 2691
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William G. WILCOX, D.O.; William G. Wilcox, D.O., P.C.,
Employees' Defined Benefit Pension Trust; and,
William G. Wilcox, D.O., P.C.,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-2193.
 United States Court of Appeals, Sixth Circuit.
 Dec. 31, 1992.
 
 Before SILER and BATCHELDER, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a wrongful levy action under Internal Revenue Code § 7426 (26 U.S.C. § 7426 (1954)). Appellants, William G. Wilcox, D.O. ("Wilcox"), William G. Wilcox, D.O., P.C. (the "Corporation"), and William G. Wilcox, D.O., P.C. Employees' Defined Benefit Pension Trust (the "Trust"), appeal the district court's grant of summary judgment to the United States. If correct, that decision, premised on a finding that the Corporation and Trust are alter egos of the individual Wilcox, entitles the Government to use assets nominally belonging to the Corporation and Trust in satisfaction of federal tax obligations individually owed by Wilcox. For reasons stated hereinafter, the judgment will be AFFIRMED.
 
 BACKGROUND[1]
 
 2
 Wilcox, an anesthesiologist, did not file personal income tax returns for the years 1981 and 1982 until March of 1984. Subsequently, the IRS made assessments against Wilcox based on both tardy returns. When Wilcox failed to satisfy these obligations,[2] the IRS filed liens against property held by the Corporation (a professional corporation that Wilcox formed and operated), and Trust (a pension trust that Wilcox formed and managed), as nominees of Wilcox. The IRS levied against and prepared to sell one of these assets, prompting plaintiffs to file suit, alleging wrongful levy. The IRS counterclaimed, seeking immediate foreclosure on its previously filed liens. On October 2, 1991, the district court finally granted the Government's motion for partial summary judgment on the counterclaim, finding that the Corporation and Trust were alter egos of Wilcox.[3]
 
 ANALYSIS
 
 3
 Plaintiffs argue that genuine issues of material fact relative to the alter ego analysis exist, making the district court's summary judgment decision improper. Essentially, they urge that although alter ego analysis typically involves a totality-of-the-circumstances evaluation, the Government, to recover here, must show some intentional use of the corporate structure by the indebted taxpayer to shield assets from the tax collector.
 
 
 4
 In support of their argument, taxpayers offer evidence specifically showing that Wilcox formed the Corporation and Trust for valid reasons and operated the Corporation and Trust in substantial compliance with federal tax laws, entitling the entities to independent tax statuses. In response to evidence that Wilcox consistently manipulated funds between himself, the Corporation, and the Trust, they promise that at trial they could provide evidence that would properly account for and explain any apparent discrepancies.
 
 
 5
 The Government argues fraud is but one of many factors to be considered in determining whether to set aside a distinct corporate form. Other factors include, for example, whether
 
 
 6
 (a) a corporation and shareholders have complete identity of interests; (b) the corporation is a mere instrumentality of the shareholders; (c) the corporation is a device to avoid a legal obligation; or (d) the corporation is used to defeat public convenience, justify a wrong, protect fraud or defend a crime.
 
 
 7
 Bodenhamer Bldg. Corp. v. Architectural Research Corp., 873 F.2d 109, 112 (6th Cir.1989).
 
 
 8
 The Government highlights repeated instances of fund commingling by Wilcox: Wilcox used corporate checks to purchase stock for personal use; Wilcox used corporate checks to substantiate claimed employee business deductions on his 1985 individual tax return; Wilcox used corporate checks to pay trust expenses; and Wilcox drove corporate vehicles for business and non-business purposes. Further, despite Wilcox's role as an "employee" of the Corporation, the Corporation failed to withhold federal income tax from wages paid to Wilcox from 1981-83. Finally, Wilcox transferred several personal assets to the Trust in 1984, virtually contemporaneous with filing his belated 1981 and 1982 personal returns, returns certain to result in heavy tax liability. The Government argues that these specific instances, when combined with Wilcox's admitted position of complete financial, operational, and decisional control over the Corporation and Trust, provided ample justification for application of the alter ego doctrine.
 
 
 9
 In addition, the Government urges that taxpayers' putative evidence is irrelevant and does not raise the requisite genuine issue of material fact. That is, to the Government, taxpayers' ability to show that the Corporation and Trust were validly formed and maintained distinct taxable identities should not change the alter ego calculus, which should focus on Wilcox's control over and use of the entities, not the motives in creating or the technical tax aspects of the relevant business forms.
 
 CONCLUSION
 
 10
 In evaluating the district court's summary judgment decision de novo, "[t]he proper inquiry ... is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Monks v. General Elec. Co., 919 F.2d 1189, 1192 (6th Cir.1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). Here, the legal backdrop, the alter ego question, involves familiar if not uniform factors.[4] As the district court noted in its decision, the practical, totality evaluation aimed at determining whether the distinctness of a legal entity should be ignored includes inquiries into the structure of ownership and control; observance of corporate formalities; presence of asset commingling; use of entity funds for individual purposes; and use of the entity for fraudulent or wrongful purposes. See Terrapin Leasing, Ltd. v. United States, 1981-1 U.S. Tax Cas. (CCH) p 9372 (10th Cir.1981) (enumerating factors); Valley Fin., Inc. v. United States, 629 F.2d 162, 171-72 (D.C.Cir.1980) (same), cert. denied, 451 U.S. 1018 (1981); G.M. Leasing Corp. v. United States, 514 F.2d 935, 939 (10th Cir.1975), rev'd on other grounds, 429 U.S. 338 (1977); Bodenhamer Bldg. Corp., 873 F.2d at 111-12 (noting that under Michigan law, corporate veil can be pierced if an entity is an instrumentality of an individual, the entity is being used to perpetuate fraud or a wrong, and there has been unjust loss to the complaining party). Essentially, the question becomes: based on all relevant factors, would the protection normally offered by the legal entity's distinct status unfairly cloak an individual actor? See also id. at 111 (describing alter ego inquiry as whether, based on all relevant facts, "corporate form has been abused"); Valley Fin., 629 F.2d at 171 ("Courts have not hesitated to ignore the fiction of separateness ... when the corporate device frustrates clear intendment of the law.").
 
 
 11
 Here, the Government's uncontroverted evidence is strong. Wilcox dominates the Corporation and Trust as sole shareholder, director, and officer of the former, and sole contributor to, and beneficiary and trustee of, the latter. Standing alone, this might not be determinative. However, the evidence also shows that Wilcox consistently used his dominant position to manipulate funds between the entities and himself for both business and personal purposes. Such evidence effectively portrays the Trust and Corporation as instrumentalities of Wilcox. This being so, allowing the shield normally offered by legal forms such as a trust or corporation to protect instrumentality assets would be inequitable.[5] The Government's case supports alter ego doctrine application.
 
 
 12
 Taxpayers simply fail to offer specific facts to refute the Government's showing, a burden assigned them under Fed.R.Civ.P. 56(e). In both their brief and their trial motion opposing the Government's arguments, taxpayers make grand predictions about the proof to be offered. However, they neither detail this proposed evidence or relate such evidence to the showing already made by the Government. All they really demonstrate, by specific facts, is that the Corporation and Trust resulted from proper motives and have maintained distinct taxable statuses, facts of little moment to this alter ego analysis.[6] Taxpayers claim that Wilcox neither formed nor operated the Corporation and Trust improperly. However, mere allegations and promises of future evidence do not suffice in opposition to a legitimately supported motion for summary judgment; specific facts, demonstrating a genuine issue for trial, must appear. Taxpayers do not meet this standard.[7]
 
 
 13
 In light of the Government's showing, and taxpayers' inability to respond as mandated by summary judgment practice, no disagreement sufficient to warrant a trial exists. The district court's decision is therefore AFFIRMED.
 
 
 
 [1]
 Another part of this dispute, unrelated to the issue at hand, is found in William G. Wilcox, D.O., P.C. Employees' Defined Benefit Pension Trust v. United States, 888 F.2d 1111 (6th Cir.1989)
 
 
 [2]
 Wilcox did not pay approximately $150,000 of the taxes he owed. For the specific dollar figures and chronology, which are of no real significance to this appeal, see id. at 1112
 
 
 [3]
 The district court dismissed with prejudice the wrongful levy claim and resolved several technical elements in its judgment on the Government's counterclaim
 
 
 [4]
 Neither party raised a choice of law issue regarding alter ego application
 
 
 [5]
 One court recognized such inequity where a corporation "was fundamentally an extension of its taxpayer-owner." Valley Fin., 629 F.2d at 173. The court stated: "The Government's inability otherwise to satisfy legitimate tax debts clearly may form a sound basis for ... disregard of corporate form." Id. at 172
 
 
 [6]
 See Wolfe v. United States, 798 F.2d 1241, 1243 (9th Cir.) (noting that "a corporation could have a valid business purpose ... and at the same time be so dominated by its owner that it could be disregarded under the alter ego doctrine"), amended, 806 F.2d 1411 (9th Cir.1986), cert. denied, 482 U.S. 927 (1987); Harris v. United States, 764 F.2d 1126, 1128 (5th Cir.1985) (noting irrelevancy of taxable status to alter ego inquiry)
 
 
 [7]
 At oral argument, taxpayers for the first time supported their theory that Wilcox had no improper motive by blaming Wilcox's accountants and lawyers for any administrative or bookkeeping practices suggesting identity between Wilcox, the Corporation, and the Trust. Though the record suggests that Wilcox relied significantly on professional advice in controlling the entities, it also shows the situs of ultimate decision-making responsibility. Wilcox and his attorney had the following deposition exchange:
 Q: And all decisions relating to the corporation--though you may have been advised by various people including the accountants, attorneys, and actuaries--has [sic] been made by yourself as the president and sole board of directors?
 A: Probably, yes.
 Joint Appendix at 107-08. However, even assuming that Wilcox's factually problematic reliance theory might raise a genuine issue, Wilcox did not make the argument at trial or in his appellate brief, and may not rely on it now, through an eleventh-hour presentation. See also Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-44 (6th Cir.1991) (expounding general rule against appellate consideration of novel arguments).