Eugene COLE and Mary Cole, His Wife, Plaintiffs-Appellants,

v.

Thomas A. CARDOZA, District Director, United States, Internal Revenue Service, Defendant-Appellee.

No. 20660.

United States Court of Appeals, Sixth Circuit.

April 27, 1971.

George Stone, Detroit, Mich., for plaintiffs-appellants; Max E. Klayman, Detroit, Mich., on brief.

John P. Burke, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Ralph B. Guy, Jr., U. S. Atty., J. Kenneth Lowrie, Asst. U. S. Atty., Detroit, Mich., of counsel.

Before PECK, McCREE and KENT, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Appellants brought this suit requesting the District Court to declare that tax assessments totaling $14,744.58 are illegal and void, to enjoin the collection of the assessments and to order the refund of the amounts already collected. The District Director filed a motion to dismiss and the trial court dismissed the complaint for lack of jurisdiction based principally on the prohibition against such suits contained in 26 U.S.C. § 7421 (a) as construed by the Supreme Court in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1961).

The assessments were alleged to be for gambling activities of appellant Eugene Cole during the period from August 1, 1965 to November 20, 1965 and consisted of an excise tax of $14,693.08 on the amount wagered during the period and a special tax of $51.50 on the occupation of wagering pursuant to 26 U.S.C. §§ 4401 and 4411. Appellants con-

tend that the assessments are illegal for a number of reasons. They argue that the assessments amount to unconstitutional bills of attainder and violate their Fifth Amendment privilege against self-incrimination; that "the assessments are arbitrary and capricious and not based upon records of any kind or upon reliable information;" that 26 U.S.C. § 6201 does not authorize assessments for wagering as claimed by the District Director; and that as a result of the foregoing illegalities an undue hardship has been imposed upon appellants, thus vesting the District Court with equitable jurisdiction and entitling them to the requested relief. Appellants also contend that the District Court erred in not declaring null and void a levy for the taxes which was filed by the Internal Revenue Service with the Register of Deeds of Oakland County, Michigan. They state that the levy constitutes a cloud on the title to their home, located at 25000 Skye Drive, Farmington, Michigan, in Oakland County, which they own by the entirety.

Prior to the recording of the assessments herein, appellant was indicted by a federal grand jury in May, 1966, for gambling activities covering the same period as that in the present suit, but the amount involved in the criminal prosecution was only $2,902.00. Subsequently, the indictment was dismissed, presumably because of the decisions of the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) holding that a proper assertion of the constitutional privilege against self-incrimination precludes criminal punishment for violations of the wagering tax provisions.

Thereafter, in August, 1969, the District Director recorded the tax assessments, $2,086.19 of which was for interest. Having received no payments on the amounts due, he proceeded to levy upon certain monies owed to Mr. Cole, including paychecks due from his employer. In December, 1969, appellants'

counsel met with representatives of the Internal Revenue Service and then filed claims for refund with the Service on the amounts levied. Appellants assert in their Bill of Complaint that despite assurances to the contrary, the Internal Revenue Service has continued to proceed or threatened to proceed in the future with enforcement of the assessments by further seizures of Mr. Cole's paychecks, or by other means available to them. Appellants further claim that unless the prayed for relief is granted, they "will be deprived of their means of livelihood for the reason that they do not have sufficient assets either to post a bond, to secure such assessments or to pay same and sue in court for the refund."

It was later disclosed during the District Court proceedings in April, 1970, that appellants had been notified that their claims for refund had been rejected by the District Director. Since a final administrative determination had at that time been made, appellants could have sued in the District Court under 26 U.S.C. § 7422 for a decision of their claims on the merits. They chose instead to perfect this appeal.

█ In turning to appellants' arguments, we disagree with their contention that imposition of the assessments herein constitutes a bill of attainder or that their Fifth Amendment privilege against self-incrimination is violated. In essence, they contend that they cannot defend against the assessments because in order to do so they are compelled to disclose incriminating information which may later be used in criminal prosecutions by both federal and state authorities. They assert that their only alternative is to pay the assessments without being afforded an opportunity to be heard.

To support their argument, appellants quoted extensively in their brief, the language of the Supreme Court in Marchetti, supra, pointing out the hazards of self-incrimination accompanying the requirements of the wagering tax system. Were we concerned in the present

case with an appeal of a conviction in which the defendant properly invoked the privilege against self-incrimination to prevent prosecution for violation of the wagering tax statutes as in *Marchetti*, appellants' argument would be most convincing. However *Marchetti* and *Grosso* stated that the wagering tax provisions were not violative of the Fifth Amendment with regard to the endeavors of the Internal Revenue Service in enforcing the taxpayer's civil liability. The Supreme Court in *Marchetti* stated:

> "We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements." 390 U.S. at 61, 88 S.Ct. at 709.

In similar if not stronger language, the *Grosso* court said:

> "Section 4411 provides that the occupational tax must be paid 'by each person who is liable for tax under section 4401' and by each person who receives wagers for one liable under § 4401. It might therefore be argued that since petitioner is entitled to claim the constitutional privilege in defense of a prosecution for willful failure to pay the excise tax, he is thereby freed from liability for the occupational tax. We cannot accept such an argument. We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extinguishes liability for taxation; we hold only that such a claim of privilege precludes a criminal conviction premised on failure to pay the tax." 390 U.S. at 69–70, n. 7, 88 S.Ct. at 714.

It is, therefore, clear that the Supreme Court preserved the civil sanctions pertaining to the wagering statutes, while at the same time insuring that no criminal prosecution could be based upon unconstitutional disclosures. This conclusion is further strengthened by the Supreme Court's decision in United States

v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), in which the Court declared that the Fifth Amendment privilege, where properly invoked, precludes the federal government from confiscating money used in violation of the wagering statutes. The Court reasoned that the forfeiture statutes under which the money was seized were "intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." 401 U.S., at 721, 91 S.Ct., at 1045, supra. Having found that the forfeiture statutes were criminal in nature, the Court determined that the Fifth Amendment privilege applies. However, even though the Court was confined to consideration of an action by the federal government in the nature of a criminal proceeding, they were very careful to reaffirm their position in *Marchetti* and *Grosso* regarding the civil liability of taxpayers under the wagering statutes by stating that they "in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities." 401 U.S., at 717, 91 S.Ct., at 1043, supra. Hence, the Court has established in unmistakable terms that the Government is free to collect taxes for gambling activities provided that no criminal punishment can result from such collection.

This court has previously considered the vitality of the wagering tax provisions following *Marchetti* and *Grosso*. United States v. Scott, 425 F.2d 817 (6th Cir. 1970), petition for cert. filed, 39 U.S.L.W. 3056 (No. 455); United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968) *vacated and remanded sub nom.* Dean v. United States, 402 U.S. ——, 91 S.Ct. 1602, 29 L.Ed.2d 105. Notwithstanding the Supreme Court's vacation and remand of our decision in *One 1965 Buick*, the following language therein on denial of a petition for rehearing is particularly applicable to the position we take in the present case:

> "[In *Grosso* and *Marchetti*], the Supreme Court limited its holding to criminal cases. The Court approved its previous decisions in License Tax

Cases, 72 U.S. 462 (5 Wall.), 18 L.Ed. 497 (1866), and United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L. Ed. 1037 (1927), which upheld the power of Congress to tax unlawful activities. It is not for us to extend *Grosso* and *Marchetti* to civil cases and thereby exempt from taxation persons who derive their income from unlawful activities because they assert their Fifth Amendment rights in a criminal case. There is such a thing as an obligation to pay the excise tax. Even though such a person may not be convicted for criminal violation, because of exclusionary rules of evidence, he still remains civilly liable for the tax." 397 F.2d 782, 783 (6th Cir. 1968).

Thus, the Supreme Court seems to have clearly determined that civil proceedings for the collection of wagering taxes are constitutional. Assessment of taxes upon an illegal business is not "punishment" and therefore, appellants' claim regarding bills of attainder cannot be maintained. Appellants' protection from self-incrimination must come from their assertion of the Fifth Amendment during criminal proceedings, which protection can be afforded to taxpayers without permitting them to thwart the Government's taxing activities. We conclude that under *Marchetti* and *Grosso*, the assessment of taxes by the Internal Revenue Service pursuant to 26 U.S.C. §§ 4401 and 4411 is a valid effectuation of Congress' power to collect the revenues as granted by the Constitution. *Marchetti, supra,* 390 U.S. at 58–60, 88 S.Ct. 697.

In the second of appellants' arguments, they contend that the assessments are illegal because they are arbitrary and capricious and not based upon reliable information. This allegation, say appellants, is sufficient to overcome the almost complete bar to such suits outlined in 26 U.S.C. § 7421(a). Section 7421 (a) reads:

" * * * no suit for the purpose of restraining the assessment or collec-

tion of any tax shall be maintained in any court."

In view of this provision, except for suits specifically excepted from section 7421 (a), the courts would seem to be without jurisdiction to enjoin assessments by the Internal Revenue Service. The Supreme Court, we think, came very close to such a complete exclusion in *Enochs, supra,* when it declared as follows:

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, *if it is clear that under no circumstances could the Government ultimately prevail,* the central purpose of the Act is inapplicable and, under the *Nut Margarine* case [284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932)], the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax'." 370 U.S. at 7, 82 S.Ct. at 1129. (Emphasis supplied.)

█ It is well established that tax assessments are presumed to be valid, and that the taxpayers have the burden of proof to show illegality. Enochs v. Williams Packing & Navigation Co., *supra,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed. 2d 292; Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959); Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Licavoli v. Nixon, 312 F.2d 200 (6th Cir. 1963). This burden is difficult for the taxpayer to sustain and only the most compelling facts justify judicial intervention in matters of this nature. More is needed than just bare allegations of illegality, even if those allegations may later be upheld. Licavoli v. Nixon, *supra,* at 202–203. Appellants must set forth well-pleaded facts under which the District Court

could conclude that the assessments were only "in the guise of a tax."

█ Appellants contend that they have met the burden of proving illegality because they allege in their complaint that the assessments are arbitrary and capricious and not based upon reliable information or upon records of any kind. They argue that such allegations must be taken as true for purposes of a motion to dismiss. We cannot agree. Appellants have stated no more than conclusions, which are not required to be accepted as true. See Sexton v. Barry, 233 F.2d 220, 223, cert. denied, 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); Cooper Agency, Inc. v. McLeod, 235 F. Supp. 276 (E.D.S.C.1964), aff'd 348 F. 2d 919 (4th Cir. 1965). With only these conclusory allegations to consider, the District Court properly ruled on the legal issues presented by the motion to dismiss without conducting a full hearing on the merits.

The difference in amount between that charged in the indictment and that assessed for civil liability is not enough to indicate that the Government cannot under any circumstances prevail. In this regard, we note that appellants failed to deny that Mr. Cole was in fact engaged in wagering or that he was liable for the $14,744.58 assessed or for any part thereof. See Vuin v. Burton, 327 F.2d 967, 970 (6th Cir. 1964).

█ We find equally unconvincing appellants' argument that section 26 U.S.C. 6201 does not authorize the assessments herein. A proper reading of sections 6201(a) and (a) (2) (A) reveals that where a taxpayer has not paid taxes normally paid by stamp, the Secretary or his representative is authorized to make assessments for all taxes imposed under the Internal Revenue laws. See generally Mensik v. Long, 261 F.2d 45 (7th Cir. 1958). Sections 6201(a) and (a) (2) (A) read:

"Sec. 6201 ASSESSMENT AUTHORITY

"(a) *Authority of Secretary or Delegate.*—The Secretary or his delegate is authorized and required to make * * * assessments of all taxes * * * imposed *by this title*, * * * which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall extend to and include the following:

* * * * * *

"(2) *Unpaid taxes payable by stamp.*—

"(A) *Omitted stamps.*—* * * whenever any transaction or act upon which a tax is required to be paid by means of a stamp occurs without the use of the proper stamp, it shall be the duty of the Secretary or his delegate, upon such information as he can obtain, to estimate the amount of tax which has been omitted to be paid and to make assessment therefor upon the person or persons the Secretary or his delegate determines to be liable for such tax." (Emphasis supplied.)

The above words "by this title" refer to Title 26 of the United States Code. While it is true that the assessments must first be paid or bonded before they can be contested (Lassoff v. Gray, 266 F.2d 745, 747 (6th Cir. 1959)), the harshness of this requirement has been somewhat alleviated by allowing taxpayers to pay the tax on a separate wagering transaction and then filing a claim for refund. Flora v. United States, 362 U.S. 145, 171, n. 37, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). As previously stated, this procedure was available to appellant at the time the District Court rendered its opinion.

Having concluded that appellants failed to sustain their burden of proving that the assessments are illegal, we need not consider whether the District Court otherwise had equitable jurisdiction. See *Enochs, supra,* 370 U.S. at 6–7, 82 S.Ct. 1125. On this point, however, we observe that appellants have an adequate legal remedy for resolution of their claims as indicated in *Flora.* Vuin v. Burton, *supra,* 327 F.2d at 970.

We consider now appellants' contention that the District Court erred in not de-

claring null and void the lien for taxes which was recorded with the Register of Deeds in Oakland County, Michigan. Our concern here is only with the issue of the validity of the tax liens as they relate to appellants' home located at 25000 Skye Drive, Farmington, Michigan, in Oakland County. Initially we observe that while appellants did not specifically request the above declaration in the prayer of their complaint to the District Court, there were sufficient facts in the complaint to warrant a determination of the issue. A pleader is entitled to the relief shown on the pleadings, even if his prayer has not demanded such relief. Fed.R.Civ.P. 54(c); Schoonover v. Schoonover, 172 F.2d 526, 530 (10th Cir. 1949); Hawkins v. Frick-Reid Supply Corp., 154 F.2d 88, 89 (5th Cir. 1946); Dari-Delite, Inc. v. Cleckner, 147 F.Supp. 838, 841 (N.D.Ohio 1957).

 This issue involves two questions. Does the federal tax lien attach to the above named property? If not, does it constitute a cloud on the title to the property such that appellants are entitled to have it removed? In answering both these questions, we look to the law of Michigan which governs the property rights of the taxpayers. United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

 The Government concedes that under Michigan law it has no valid claim against the home of appellants. Shaw v. United States, 94 F.Supp. 245 (W.D.Mich.1939); see United States v. Nathanson, 60 F.Supp. 193 (E.D.Mich. 1945). In Michigan tenants by the entirety hold under a single title. Neither spouse has the power without the concurrence of the other to alienate the estate or any interest therein, and neither the land nor the rents and profits therefrom are subject to levy or execution for the sole debts of the husband. Farrell v. Paulus, 309 Mich. 441, 445, 15 N.W.2d 700, 702 (1944). Thus, in the present situation, the federal tax lien does not attach to the subject property owned by Eugene and Mary Cole by the entirety, because the Government's tax lien is against Eugene Cole only. If the lien constitutes a cloud on the title to that property, appellants are therefore entitled to have the lien declared a nullity as to the property.

 Michigan law recognizes that a cloud upon a title can be merely an apparent defect and that if it "has a tendency, even in the slightest degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership," it should be removed. Whitney v. Port Huron, 88 Mich. 268, 272, 50 N.W. 316, 317–318 (1891). Any circumstance which would make the average prospective purchaser or mortgagee hesitant to purchase or mortgage the property until a matter is cleared up is sufficient to show the existence of a cloud on the title. Pierson v. Davidson, 252 Mich. 319, 233 N.W. 329 (1930); see generally McKnight v. Broedell, 212 F.Supp. 45, 48 (E.D.Mich. 1962); Bartos v. Czerwinski, 323 Mich. 87, 92, 34 N.W.2d 566, 568 (1948).

 It must be conceded, however, that no declaration of the Michigan Supreme Court is exactly in point, and that it cannot therefore be categorically stated that under Michigan law the lien in question would constitute a cloud. It thus becomes incumbent upon us to determine on the basis of the present state of the Michigan law and of that of other jurisdictions what conclusion would most likely be reached on the issue by the Michigan courts. Davis v. Smith, 253 F.2d 286, 289 (3rd Cir. 1958). In our view, the existence of a federal tax lien on the public land records pertaining to appellants' property would make a prospective purchaser or mortgagee hesitant to commit himself until the tax lien was removed. See Pettengill v. United States, 205 F.Supp. 10 (D.Vt. 1962). A title examination would not disclose whether an assessment was for a deficiency with regard to a joint income tax return filed by husband and wife or was levied because both were

engaged in the activity being taxed. Such doubt would affect the title of the property and cause reasonable prudent purchasers to refuse to accept it until they were certain the title was clear. In these circumstances, it is our conclusion that the Michigan courts would determine the existence of a cloud on the title.

In view of this conclusion, considered in the light of our earlier determination that appellants are entitled to have the lien declared a nullity if it constitutes a cloud, we hold that the lien is without legal effect as it pertains to appellants' home.

The cause is remanded to the District Court, which is instructed to enter an order determining the lien on record with the Register of Deeds of Oakland County, Michigan, for the tax assessments arising out of Eugene Cole's alleged wagering activities from August 1, 1965, to November 20, 1965, to be null and void as pertaining to the property held by Eugene and Mary Cole at 25000 Skye Drive, Farmington, Michigan, by the entirety. The judgment of the District Court in all other regards is affirmed.