Elbert L. HATCHETT, and Laurestine Hatchett, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, and United States of America, Defendants.

No. 94–CV–74708–DT.

United States District Court, E.D. Michigan, Southern Division.

March 31, 2000.

Martin L. Fried, Robert N. Bassel, Goldstein, Bershad, Southfield, MI, for plaintiffs.

Thomas R. Jones, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### ORDER DENYING DEFENDANTS' MOTION FOR RECUSAL AND GRANTING IN PART AND DENYING IN PART CROSS–MOTIONS FOR SUMMARY JUDGMENT

HOOD, District Judge.

This matter is before the Court on the Government's motion to have this Court recuse itself. The Government contends that this Court obtained extra-judicial knowledge about the instant wrongful levy action while sitting on a three judge panel which presided over Plaintiff Elbert Hatchett's attorney reinstatement proceeding. The matter is also before the Court on cross motions for summary judgment filed by the parties. The Government argues in opposition to Plaintiffs that taxes levied against four properties and a mortgage owned by Plaintiffs were not wrongful under four theories: fraudulent conveyance, lien tracing, nominee/alter ego, and instantaneous lien attachment. For the reasons set forth herein, the Court denies the Government's motion for recusal, denies in part and grants in part the Government's and Plaintiffs' cross motions for summary judgment.

### I. FACTS

#### A. Wrongful Levy Action

Elbert and Laurestine Hatchett, who are husband and wife, filed this wrongful levy action against the IRS and the United States (referred to collectively as the "Government") on November 21, 1994, requesting that this Court enjoin the tax sale of four real properties and the seizing of mortgage payments due to the Hatchetts on another real property because the properties are either owned by Elbert and Laurestine Hatchett as tenants by the entireties under Michigan law or are owned individually by Laurestine Hatchett.

Elbert and Laurestine Hatchett received a Tax Levy and four Notices of Seizure dated October 24 and 25, 1994, which indicated that the four parcels of real property had been seized for nonpayment of past due taxes owed by Elbert Hatchett. Several days later, Plaintiffs received Notices of Public Auction Sale which indicated that the real properties would be sold at a public auction on November 30, 1994 ("Tax Sale"). The four properties are as follows:

1) 285 West Hickory Grove, Bloomfield Hills, Michigan;

2) 79 Bloomfield Blvd., Bloomfield Township, Michigan;

3) 82 Franklin Blvd., Pontiac, Michigan;

4) 352 South Saginaw, Pontiac, Michigan.

Plaintiffs claim that the tax levies on 285 West Hickory Grove and 352 South Saginaw are wrongful because they were owned by Elbert and Laurestine Hatchett as tenants by entirety at the time of the levy and as of the date of the Complaint. The Government claims that the property at 285 West Hickory Grove was purchased as tenants by the entirety in April 1974, but was quit claimed to Laurestine Hatchett and the Hatchetts' daughter, Ayanna Hatchett, in August 1991. The Government claims the property at 352 South Saginaw was quit claimed into a tenancy by entirety in March 1984, and quit claimed to Elbert's wife and daughter in August 1994.

Plaintiffs claim the tax levies on 82 Franklin Blvd. and 79 Bloomfield Blvd. are wrongful because they were owned individually by Laurestine Hatchett. The Government claims Elbert Hatchett bought the property at 79 Bloomfield in his own name in October 1973 and conveyed it into tenancy by entirety in May 1984. The Government claims the Hatchetts quit claimed the property at 82 Franklin out of the tenancy by entirety and conveyed it to Laurestine and Ayanna Hatchett in 1984.

On June 26, 1995, Plaintiffs filed their First Amended Complaint for Injunctive Relief requesting that the Government be enjoined from levying or seizing mortgage payments due to the Hatchetts from Ernest and Hermetha Jarrett on property located on 6300 Cyclone Road, Otter Lake, Michigan. This request was prompted by Plaintiff receiving a notice of levy against Elbert Hatchett's interest in real property located at 6300 Cyclone Road, Otter Lake, Michigan. Plaintiffs claim, and the Government agrees, that the Hatchetts owned this property as tenants by the entirety until they sold it to the Jarretts on August 19, 1991. The Jarretts granted a mortgage to the Hatchetts dated August 18, 1991. The Hatchetts claim they own the mortgage as tenants by the entirety.

The Government issued a trial subpoena, which the Hatchetts objected to on the ground that it raised issues not within the pleadings. As a result, the Government filed a Motion to Amend its Answer to the Verified First Amended Complaint on April 30, 1996, seeking to add a theory of fraudulent conveyance. In its Memorandum Opinion and Order, dated February 28, 1997, this Court granted the Hatchetts' Motion to Quash Trial Subpoena and reversed Magistrate Judge Donald A. Scheer's Orders which had granted the Government's motion to add the fraudulent conveyance defense. The Court based this opinion on a number of reasons: 1) the Government lacked standing to pursue a fraudulent conveyance defense given that the bankruptcy trustee did not pursue this allegation;[1] 2) laches prevented the Government from filing the affirmative defense; 3) and res judicata barred the issue because a settlement had been reached and no appeal was taken. As to the Motion to Quash, the Court agreed with Plaintiffs' assertion that information relating to the respective incomes of the Hatchetts was irrelevant. The Court ruled:

> Given that the current rule in the Sixth Circuit is that a federal tax liability of one spouse does not attach to the property held by the entireties, the information sought by the United States regarding the entireties properties is not relevant. Also, the Court finds that the trial subpoena is a belated discovery request filed long after discover has been completed. The Court further finds that the requested information would be overly burdensome to the Plaintiffs since it requests information which spans over 20 years. The Magistrate Judge erred in denying Plaintiffs' Motion to Quash on this issue.

1. Plaintiffs Elbert Hatchett had filed for bankruptcy under Chapter 11, which was later converted to Chapter 7. Although the bankruptcy trustee filed a fraudulent conveyance action against Mr. Hatchett, the trustee did not pursue the action, and on April 2, 1993, the bankruptcy judge entered an Order Approving Settlement Agreement and Mutual Release. No appeal was taken from this order.

The Government filed a motion for reconsideration of this order on March 17, 1997, which the Court later denied in an order filed April 9, 1998.

## B. The Reinstatement Petition

The Government's Motion for Recusal stems from the April 22, 1997, petition for reinstatement to the bar of this court filed by Plaintiff Elbert Hatchett. *See In re: Elbert Hatchett*, Misc. Case No.91–X–74656. Plaintiff Hatchett had been suspended from practice in this court as a result of his suspension by the Michigan Attorney Discipline Board which began September 27, 1991. The suspension by the Michigan Attorney Discipline Board was for a period of 120 days and occurred as a result of Elbert Hatchett's April 1989 conviction in this court on four misdemeanor counts of wilful failure to pay income taxes. The order of suspension in this court was entered on October 7, 1992. Petitioner was reinstated to practice in the Michigan courts on October 18, 1993, following a hearing where he was required to establish by clear and convincing evidence a number of factors bearing on his ability and fitness to practice law in the State of Michigan.[2]

Reinstatement to practice before the Michigan state courts does not automatically result in reinstatement to practice before this federal court. *See* E.D. Mich. Local R. 83.22(g)(3). Attorneys are required to petition for reinstatement. Upon such petition a three judge panel is appointed by the Chief Judge to consider the petition. On March 24, 1997, such a panel granted Plaintiff's Petition for Limited Reinstatement affording him the opportunity to handle one criminal matter in this court. During the hearing on the limited petition, Plaintiff requested full reinstatement. The panel refused to consider full reinstatement because full reinstatement was not properly before it.[3]

On April 22, 1997, Plaintiff petitioned this federal court for full reinstatement. On May 7, 1997, Chief Judge Anna Diggs Taylor appointed a panel of three different judges to hear the petition for full reinstatement. The panel consisted of Judges Horace Gilmore, Judge Bernard Friedman, and Judge Denise Page Hood. In the usual course and practice of this court,

**2.** In 1993, Michigan Rules of Court 9.123(B) read as follows:

> **(B) Revocation or Suspension More than 119 days.** An attorney whose license to practice law has been revoked or suspended for more than 119 days is not eligible for reinstatement until the attorney has petitioned for reinstatement under MCR 9.124 and has established by clear and convincing evidence that:
>
> (1) he or she desires in good faith to be restored to the privilege of practicing law in Michigan;
>
> (2) the term of the suspension ordered has elapsed or 5 years have elapsed since revocation of the license;
>
> (3) he or she has not practiced or attempted to practice law contrary to the requirement of his or her suspension or revocation;
>
> (4) he or she has complied fully with the order of discipline;
>
> (5) his or her conduct since the order of discipline has been exemplary and above reproach;
>
> (6) he or she has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself or herself in conformity with those standards;
>
> (7) he or she can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an offer of the court;
>
> (8) he or she is in compliance with the requirements of subrule (C) if applicable; and
>
> (9) he or she has reimbursed the client security fund of the State Bar of Michigan or has agreed to an arrangement satisfactory to the fund to reimburse the fund for any money paid from the fund as a result of his or her conduct. Failure to fully reimburse as agreed is ground for revocation of a reinstatement.

**3.** This Judge was not a member of the panel who granted Elbert Hatchett's petition for limited reinstatement.

Chief Judge Taylor's order referred the petition to the Grievance Administrator of the Michigan Attorney Grievance Commission for investigation and the Grievance Administrator was directed to send the Grievance Commission's investigative reports and transcripts of its reinstatement proceedings to the three judge panel and the Clerk of this court. The record before the Michigan Attorney Grievance Commission is voluminous.

On May 29, 1997, prior to the first hearing on Plaintiff's reinstatement petition, this court set a status conference for June 16, 1997, in the wrongful levy action. The first hearing on Plaintiff's reinstatement petition was held on June 12, 1997. Prior to the hearing date, this judge informed the other members of the three judge panel of the civil litigation pending in her court between the Government and the Hatchetts. The other judges agreed to proceed. At the onset of this hearing, this Judge disclosed that the instant civil lawsuit was pending before her. No one objected to her presence as a member of the panel. During this first hearing the court did question the attorney from the Grievance Commission regarding the attorney's comments regarding the Plaintiff's financial disclosure which the attorney had indicated had been an issue at the hearing on the limited reinstatement petition. The hearing was continued to June 19, 1997.

A status conference in this wrongful levy case was held as scheduled on June 16, 1997, and the parties were granted leave to file cross motions for summary judgment on the issues remaining in the case. These motions, along with the Government's Motion to Dismiss for Lack of Jurisdiction, were filed the end of July 1997, and set for a September 29, 1997, hearing date.

The hearing on the petition for reinstatement resumed on June 19, 1997. On September 17, 1997, the majority of the three judge panel denied Elbert Hatchett's Petition for Reinstatement in a written order. Judge Hood dissented in a separately written order issued the same date.

## C. Subsequent Procedural History

On September 29, 1997, a hearing was held on the parties' cross-motions for summary judgment in this wrongful levy case. This Court, by notice dated January 17, 1998, set a final pretrial conference in this matter for March 23, 1998, and a trial date of March 24, 1998.

On March 23, 1998, the Court ruled on the record that it would issue an order which would deny the Government's Motion to Dismiss for Lack of Jurisdiction and its Motion for Reconsideration of the Court's February 28, 1997, order which granted the Hatchetts' Motion to Quash, and denied the Government's motion to add a defense of fraudulent conveyance. The Court also stated that it would grant in part and deny in part the Government's and the Hatchetts' cross-motions for summary judgment. Specifically, that Court stated that the Government could not pursue its lien tracing theory and nominee/alter ego theory, and reiterated that it could not pursue its fraudulent conveyance theory, but stated that it could pursue its instantaneous lien theory which, in essence, allowed the Government to seek half of the proceeds of any properties which were conveyed out of the tenancy by the entirety. The parties were to return for a conference on March 24, 1998, with a joint final pretrial order consistent with the ruling.

During the March 24, 1998, conference, the Government asserted that Elbert Hatchett's probation was to be violated in an ongoing proceeding before another judge. This Court advised the Government that it was unaware of this violation, as it had sat on the three judge panel which considered Mr. Hatchett's petition for reinstatement, and had been advised that Mr. Hatchett was in compliance with probation. The Government claims this was the first notice it received of this Court's participation on the panel. This

was the first notice this Judge gave to the Government. As it turns out, Mr. Hatchett's probation was not violated.

The parties returned on March 25, 1998, and the Government made an oral motion for recusal. The Court denied the oral motion, but indicated that the Government would be afforded an opportunity to file a written motion after it had reviewed the record with respect to Plaintiff's Petition for Reinstatement. At the request of the Government, an evidentiary hearing was held to allow the Government the opportunity to proffer the evidence it would have relied on to support its claims of fraudulent conveyance, lien tracing, and nominee ownership which claims had been disallowed by this Court.

The parties requested that the Court stay the wrongful levy action pending the decision in *Craft v. Commissioner*, 140 F.3d 638 (6th Cir.1998), which was on appeal to the United States Court of Appeals for the Sixth Circuit.[4] On March 31, 1998, this Court ordered the wrongful levy action stayed pending the decision in *Craft*. Ironically, the Sixth Circuit decided *Craft* the next day, on April 1, 1998. On April 8, 1998, this Court entered orders denying the Government's Motion for Reconsideration of the Order striking the fraudulent conveyance defense and denying the Government's Motion to Dismiss for Lack of Jurisdiction, which the Court had previously denied on the record. The Court allowed the parties to submit supplemental briefs on the cross-motions for summary judgment, limited to the issue of what effect the *Craft* decision would have on the wrongful levy action, and held it opinion in abeyance. The Court set a hearing date of April 23, 1998, for supplemental oral arguments which was later adjourned to May 20, 1998. The parties submitted supplemental briefs on April 17, 1998.

The Government then filed this Motion for Recusal on April 27, 1998, to which Plaintiffs have filed a response. No oral arguments were held on this matter; however, the supplemental oral arguments relative to the *Craft* decision was held on May 20, 1998.

## II. MOTION FOR RECUSAL

### A. Standard of Review

■ The Government claims this Court must disqualify itself pursuant to 28 U.S.C. § 455(a) and § 455(b)(1). Section 455(a) provides, "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This standard is not based "on the subjective view of a party." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir.1989) (quoting *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989)). In determining whether to recuse herself, a judge must apply an objective standard and recuse herself if a reasonable, objective person, knowing all of the circumstances, would question the judge's impartiality. *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir.1990). "What matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

■ Pursuant to section 455(b)(1) a justice, judge, or magistrate of the United States shall disqualify herself if she has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Under this standard, a judge must actually hold a bias or prejudice or have personal knowledge of the disputed facts. *See Liteky*, 510 U.S. at 552–53, 553 n. 2, 114 S.Ct. 1147 (distinguishing between subjective bias or prejudice proscribed by § 455(b)(1) and the objective appearance of bias or prejudice proscribed by § 455(a)).

---

4. Now published as *Craft v. United States,* 140 F.3d 638 (6th Cir.1998).

Both 28 U.S.C. § 455(a) and § 455(b)(1) are subject to the extrajudicial source doctrine, which requires that the personal knowledge of the disputed facts or the information which would cause a reasonable person to question impartiality be obtained by the judge from an extrajudicial source. *Liteky,* 510 U.S. at 553, 114 S.Ct. 1147. The extrajudicial source doctrine was first annunciated in *United States v. Grinnell,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). The Court in *Liteky* explained that *Grinnell,*

> clearly meant by "extrajudicial source" a source outside the judicial proceeding at hand-which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge...

*Liteky,* 510 U.S. at 553, 114 S.Ct. 1147.

**B. Discussion**

**1. 28 U.S.C. § 455(b)(1)**

■ The Court first addresses the Government's argument that during Elbert Hatchett's reinstatement hearing this Court obtained personal knowledge of the disputed facts in the instant wrongful levy action. The Court accepts the Government's argument that the reinstatement hearing was an extrajudicial proceeding, in that it was a separate proceeding from the wrongful levy action which is currently before the Court. The Court disagrees, however, with the Government's contentions that the Court "obtained personal knowledge of facts relevant to this proceeding" and was "exposed" to "evidence directly relevant in this case," including the credibility of Elbert Hatchett. (Def. Br. at 13, 14.)

The Government claims the Court obtained such facts as Plaintiffs' position that the Government is wrongfully levying against their properties and that Elbert Hatchett has made a full disclosure of his resources to the Government. This Court did not obtain the information regarding the wrongful levy from the 1997 reinstatement proceedings, but rather became aware of Plaintiffs' position that the levy by the Government against their properties was wrongful when Plaintiffs filed their Complaint and Amended Complaints in 1994 and 1995, respectively. The whole basis of the Verified Amended Complaint filed in this lawsuit is the Hatchetts' allegation of wrongful levy against certain properties by the IRS.

In the petition for reinstatement, the issue of financial disclosure was whether Elbert Hatchett had made a sufficient disclosure of his finances to the Probation Department of the United States District Court for the Eastern District of Michigan for the purpose of the Probation Department determining a restitution payment schedule. It is not clear to this Court that Plaintiff's ability to pay, his overall financial condition, or his disclosure to the Government, or lack thereof, of his finances are questions this Court will consider in the cross-motions for summary judgment, nor would they have been relevant for trial.

■ The Government claims that this Court's dissenting opinion in the reinstatement proceeding was based on Plaintiff's unsworn, self-serving statements that he made full disclosure of his financial condition to the IRS and was in compliance with his restitution order. The Government is mistaken. In support of its position, the Government relies on one sentence in this Court's dissenting opinion which reads:

> [Elbert Hatchett] is apparently in full compliance with the terms and conditions of his probation, including monthly payment of restitution at a rate set by the Probation Department of this Court.

*In re Elbert Hatchett,* Misc. Case No. 91–X–74656 (Docket No. 36, Dissenting Op. p.2). The Government also suggests that this Court's questioning of the attorney for the Michigan Attorney Grievance Commission indicated that the Court accepted Mr. Hatchett's representation that he had made full disclosure to the IRS, and that disclosure would be a substitute for full

disclosure to the three judge panel. The questions proceeded as follows:

MS. BULLINGTON: Again, I would just indicate, I believe at the last federal proceeding that the Court did express a concern that Mr. Hatchett make a full written disclosure of assets and liabilities in order to enable this body to make and consider determination whether Mr. Hatchett was complying in good faith with attempting to pay off his federal tax liabilities.

JUDGE HOOD: Can I ask you a question about that? When they make the representation that such a disclosure be made for purposes of making a settlement offer to the IRS do you think that such a disclosure was not made to them?

MS. BULLINGTON: I have no idea whether or not it was made to the IRS or not. The IRS is not obviously this court. And the concern—

JUDGE HOOD: My question was whether or not you believe whether or not they made such a disclosure to the IRS?

MS. BULLINGTON: I have no information on which I could reply to that because as this court is aware there is strict confidentiality provisions that the IRS operates under, and there just be no way to us [sic] finding out that information. And, again, the IRS is a separate body from this court, and I thing that this court is entitled to that knowledge.

JUDGE HOOD: Thank you.

(Hearing on Reinstatement, June 12, 1997, pp. 23–24.) The questions merely asked whether or not the IRS thought Mr. Hatchett had made a full disclosure to IRS. Nothing in this colloquy indicates that the court is making an overall determination of Mr. Hatchett's credibility, and much less on any issue related to the civil proceeding involving the alleged wrongful levy.

As to this Court's dissent which stated Mr. Hatchett was in compliance with the restitution order, the panel received information from Elbert Hatchett's Probation Officer that he had satisfactorily disclosed to the Probation Officer his financial condition. The Probation Officer set a payment schedule based on what the Mr. Hatchett suggested he could pay. While the Court might agree that $750.00 on an $8,000,000.00 restitution order may be unsatisfactory to the IRS, that was not a matter for the three judge panel to determine. The panel was charged with deciding whether the petitioner has demonstrated by clear and convincing evidence, "that he or she has the moral qualifications, competency and learning in the law to practice before this Court, and that his or her resumption of the practice of law would not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest." E.D. Mich. L.R. 83.22(g). The panel was to determine if Mr. Hatchett was in compliance with the conditions of his probation, not what the conditions of the probation should be. Those conditions were set by the sentencing judge. The judgment in Plaintiff Hatchett's criminal action required Mr. Hatchett to serve four consecutive sentences of one year imprisonment, with the last year suspended in lieu of five years probation, to pay fines on several counts, and to pay all back taxes during the period of probation. The judgment does not set forth a payment schedule for the fines or taxes. The schedule was set by Mr. Hatchett's probation officer, as evidenced by the judgment which was included in the Michigan Grievance Commission materials. It did not require, as suggested by the Government, approval by the IRS or the sentencing judge, although approval by the sentencing judge may be inferred.

The Government also argues that while "Your Honor was accepting as true Hatchett's representation as to his financial statutes in the reinstatement proceeding," (Def. Brief at 14–15), the Court had before it the Government's Motion for Reconsideration of the Court's order overrul-

ing the magistrate judge's decision to allow the Government to amend its answer and for subpoena of the Hatchetts' financial records. The Motion for Reconsideration raised no new issues, and was denied therefore pursuant to Eastern District of Michigan Local Rule 7.1(h)(3). This Court is stretched to conceive how upholding a ruling, articulated and written in opinion form prior to the reinstatement proceedings, shows actual bias or the appearance of impropriety. Nor does the Court see that its decision was tainted by exposure during the reinstatement hearing to knowledge pertinent to the motion for reconsideration. This is especially true since the Court did not rely on Plaintiff Hatchett's unsworn statements at the reinstatement hearing. Mr. Hatchett's credibility at the reinstatement proceeding is just not in issue with respect to the decisions the Court made or would have to make on the issues of wrongful levy, or the Government's theories of fraudulent conveyance, lien tracing, nominee, and instantaneous lien. The Court's rulings on the Government's theories rest solely on issues of law, not facts.

### 2. 28 U.S.C. § 455(a)

The Government also argues the Court should recuse itself pursuant to 28 U.S.C. § 455(a) which provides that a judge should disqualify herself if a "reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Dandy,* 998 F.2d 1344, 1349 (6th Cir.1993). The Court reiterates that this is an objective, standard, not to be based on the subjective view of the parties. *Wheeler,* 875 F.2d at 1251. Moreover, as the Supreme Court further explained:

> First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of

prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or. disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky,* 510 U.S. at 555, 114 S.Ct. 1147.

The Government argues that the Court may reasonably be viewed as lacking impartiality because she dissented from the ruling of two other judges. The Government cites no basis upon which a reasonable person knowledgeable in all the facts might so conclude. Instead, the Government once again inaccurately relies upon the its impression that in order for this Court to find Mr. Hatchett in compliance with his payment of $750.00 per month on a $8,000,000, restitution amount, the Court must conclude that the restitution schedule is appropriate, as opposed to whether or not Mr. Hatchett abided by the schedule set by the Probation Department by making his monthly payments. The Government reiterates that the IRS did not approve the order, and again the Court reiterates that whether or not the victim, the IRS, agreed to or approved the restitution order was not an issue for the three judge reinstatement panel, but rather was an issue for those involved in the setting of the restitution payment schedule.

■ The Government has failed to support its argument that a reasonable person knowledgeable in all the facts would reasonably question the impartiality of this Court. Nothing in this Court's participation on the three judge panel, nor its dissent, nor any rulings on the wrongful levy action exhibit deep-seated favoritism

toward Mr. Hatchett, nor any antagonism against the Government.

### 3. Clarification of Facts

The Government in its briefs takes liberties with the facts. A few inaccuracies not already noted are worth noting separately. It is just inaccurate that the Court advised the other members of the three judge panel of the wrongful levy action during the first hearing on the reinstatement. The Court, in fact, advised the other members of the panel of the case pending on her docket at the time the petition was set for hearing. Of course counsel would not know this because it was a part of the three judge panel proceedings not preserved on the record. Both Judge Gilmore and Judge Friedman were aware of the Hatchetts' pending civil action before taking the bench on June 12, 1997.

■ It is true that the Court failed to directly inform the Assistant United States Attorneys assigned to this case of the petition for reinstatement. However, the United States Attorney for the Eastern District of Michigan was directly informed, a notice of the Petition for Reinstatement was advertised, and the public invited to respond. Hindsight might suggest that a better action would have been for the Court to directly notify the assigned counsel. However, this does not constitute error, nor require disqualification.

The Government also suggests that because this court dissented and would have favored Mr. Hatchett's reinstatement, the Court is not impartial. Yet, Mr. Hatchett's reinstatement could have resulted in increased income to him, and thereby increased repayment of his restitution. Although the Government concludes that the Court based its dissenting opinion on Mr. Hatchett's statements at the hearing on the petition, the record before the Michigan Grievance Commission conclusively supports Mr. Hatchett's ability to practice law. At issue was only the concern of having a person serving probation and appearing generally as an attorney in the same court. The majority wrote, "This panel also finds that it is detrimental to the integrity and standing of the bar and is not in the public interest to reinstate Mr. Hatchett to practice before this court during the time that he is on probation to this court for a serious offense." *See In re Elbert Hatchett,* Misc. Case No. 91–X–74656 (Docket No. 36, Majority Op. p.2). The question of Mr. Hatchett's restitution payment schedule was only raised to determine if he was in compliance with the schedule and his restitution order.

The court finds that there is not sufficient basis for disqualification in this matter. The Government's motion for recusal is DENIED.

### III. CROSS–MOTIONS FOR SUMMARY JUDGMENT

#### A. Standard of Review

The parties seek summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there are issues of fact requiring a trial, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). A "material" fact exists if there is a "dispute over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

The moving party has the initial burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered if the nonmoving party fails to provide sufficient evidence on an essential element to that party's case on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party must present more than a mere scintilla of evidence and "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 252, 106 S.Ct. 2505 (internal citation omitted). If the nonmoving party fails to present evidence that opposes the moving party, the evidence submitted by the moving party will be taken as true. *Id.* at 248–49, 106 S.Ct. 2505.

**B. Analysis**

■ Plaintiffs brings this action pursuant to 26 U.S.C. § 7426, which allows a person or entity other than the delinquent taxpayer to bring a civil action for wrongful levy against the United States. 26 U.S.C. § 7426; *Ames Investment, Inc. v. United States of America,* 819 F.Supp. 666, 670 (E.D.Mich.1993). In a wrongful levy action, the plaintiff bears the initial burden of showing that he or she has an interest in the property, and that the IRS' levy on that property is wrongful because it assessed the tax on a different person or entity. *Ames Investment, Inc.,* 819 F.Supp. at 670 (citing *Morris v. United States Dep't of Treasury,* 813 F.2d 343, 345 (11th Cir.1987); *William L. Comer Family Equity Trust v. United States,* 732 F.Supp. 755, 759 (E.D.Mich.1990)). Once the plaintiff demonstrates this interest, the burden shifts to the Government to prove a nexus between the taxpayer and the property levied upon by substantial evidence. *Id. See also Nelson v. United States,* 821 F.Supp. 1496, 1500 (M.D.Ga. 1993). The ultimate burden remains with the plaintiff, however, to convince the court that the levy should be overturned. *Nelson,* 821 F.Supp. at 1500.

In order to prevail in this wrongful levy action, Plaintiffs must meet a two-prong standard. First, Plaintiffs must prove that the property is owned by another person or entity, and not by the taxpayer, Elbert Hatchett. *Dubinsky v. United States,* 62 F.3d 182 (7th Cir.1995). Second, if the property is held by an entity—here, entirety property—rather than the individual taxpayer, the legal issue must be resolved as to whether the Government may validly assert a lien on the property. *See Cole v. Cardoza,* 441 F.2d 1337 (6th Cir.1971).

As to the first prong, the four properties and the mortgage on the fifth property upon which the Government levied taxes is currently owned either by the Hatchetts' as tenants by the entirety or by Elbert Hatchett's wife, Laurestine Hatchett. Accordingly, the properties are not owned by Elbert Hatchett, the individual taxpayer.

The gravamen of the parties' dispute arises from the second prong—whether the Government may levy on these properties. The Internal Revenue Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien generally arises when the IRS makes the assessment, and continues until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322; *Craft v. United States,* 140 F.3d 638, 641 (6th Cir.1998).

■ Because federal tax law creates no property rights but merely attaches federal consequences to rights created under state law, state law determines the nature of the legal interest which the taxpayer had in the property. *Id.* (citing *United*

States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 585 (1940)). See also United States v. Certain Real Property Located at 2525 Leroy Lane, 910 F.2d 343, 347–48 (6th Cir.1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); Cole v. Cardoza, 441 F.2d 1337, 1343 (6th Cir.1971). " '[O]nce it has been determined that state law creates sufficient interest in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." Id. (quoting United States v. National Bank of Commerce, 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) and Bess, 357 U.S. at 56–57, 78 S.Ct. 1054). "Under federal tax law, the government's tax liens attach to every interest in property a taxpayer might have, regardless of whether that interest is less than full ownership or is only one among several claims of ownership." Id. (citing United States v. Safeco Ins. Co. of America, Inc., 870 F.2d 338, 341 (6th Cir.1989); National Bank of Commerce, 472 U.S. at 725, 730, 105 S.Ct. 2919)..

▮▮▮▮ The parties agree that at the time of the tax levy the property at 79 Bloomfield was owned exclusively by Elbert Hatchett, and Plaintiffs have stipulated to withdrawing the wrongful levy action with respect to this property.[5] The remaining property is held by the Hatchetts as tenants by the entirety. Under Michigan law, tenants by the entirety, who must be husband and wife, hold under a single title with right of survivorship. Craft, 140 F.3d at 641; Leroy Lane, 910 F.2d at 346; Cole, 441 F.2d at 1343. A tenancy by the entirety can be created only by a written instrument of conveyance, which produces unity of persons,

time, title, interest, and possession. Craft, 140 F.3d at 641 (citing Rogers v. Rogers, 136 Mich.App. 125, 356 N.W.2d 288, 292–93 (1984)). Neither husband nor wife acting alone can alienate any interest in the property, nor can creditors of one spouse levy upon the property. Id. at 642, 356 N.W.2d 288 (citing Matter of Grosslight, 757 F.2d 773, 775 (6th Cir.1985)). The creditors of one spouse cannot reach that spouse's share of proceeds from a foreclosure sale of an entireties property. Id. (citing Muskegon Lumber & Fuel Co. v. Johnson, 338 Mich. 655, 62 N.W.2d 619, 623 (1954)). Divorce converts an entireties estate into a tenancy in common. Id. (citing Mich. Comp. Laws Ann. § 552.102; United States v. Certain Real Property Located at 2525 Leroy Lane, 910 F.2d 343, 351 (6th Cir.1990) ("Leroy Lane I")). Spouses can also terminate an entireties estate by a joint conveyance. See Leroy Lane I, 910 F.2d at 351. Although the government can levy against property held as a tenancy by the entirety for nonpayment of real estate taxes on the real property itself, the government can not attach a lien to the entireties property to satisfy the personal tax liability of a single spouse. Craft, 140 F.3d at 642 (citing Robbins v. Barron, 32 Mich. 36 (1875), Cole v. Cardoza, 441 F.2d 1337, 1343 (6th Cir.1971)).

▮▮▮▮ The Court finds that no genuine issue of material fact exists and that Craft v. United States, 140 F.3d 638 (6th Cir. 1998), is dispositive on the issue of whether the Government wrongfully levied on Plaintiffs' property held as a tenancy by the entirety. The Sixth Circuit unequivocally held, "Because Michigan law does not recognize one spouse's separate interest in an entireties estate, a federal tax lien against one spouse cannot attach to property held by that spouse as an entireties estate." Id. at 643. The Craft panel specifically addressed and struck down the Government's instantaneous lien theory—

---

**5.** A separate order will be issued along with this Memorandum Opinion and Order regard-

ing the 79 Bloomfield property.

the theory this Court was previously inclined to allow. The government had argued in *Craft* that when the spouses, Sandra Craft and Don Craft (the taxpayer), conveyed property out of a tenancy by entirety and into sole ownership by Sandra Craft, "the tenancy by the entirety was terminated and Don— for a moment in time— owned a one-half interest in the property to which the lien could attach." *Id.* at 643. The *Craft* court disagreed:

> Although the entireties estate was terminated upon conveyance of the Berwyck Property to Sandra, Don's interest in the property terminated at the same time. We are unaware of any precedent indicating that an entireties estate is automatically transformed into a tenancy in common as an intermediary step in the conveyance of the property.

*Id.* at 644. The *Craft* Court likewise held that the taxpayer did not possess a separate future interest in the property to which the levy could attach. *Id.* at 644. For these same reasons, the Government's remaining theories—1) nominee/alter ego in which the Government argued that the Jarretts who granted a mortgage to the Hatchetts on the Cyclone property are the alter egos of the Hatchetts; and 2) lien tracing in which the Government claimed it had a lien on Elbert Hatchett's money, and that money was used to pay for the properties—are likewise unpersuasive.

The *Craft* Court went on to find that because Michigan law does not allow a spouse to use the doctrine of tenancy by the entirety to defeat the rights of a judgment creditor, a fraudulent conveyance can be set aside. *Id.* (citing Mich. Comp. Laws § 566.19(1); *McCaslin v. Schouten,* 294 Mich. 180, 292 N.W. 696, 698 (1940); *Morris v. Wolfe,* 48 Mich.App. 40, 210 N.W.2d 16, 17 (1973)). This Court determined in its Memorandum Opinion and Order, dated February 28, 1997, that the Government could not bring a theory of fraudulent conveyance, and upheld that opinion in denying the Government's Motion for Reconsideration on April 8, 1998.

The Court finds that no genuine issue of fact exists. Plaintiffs are entitled to judgment as a matter of law that the Government wrongfully levied on the properties located at 285 West Hickory Grove, 82 Franklin Blvd., 352 South Saginaw, and 6300 Cyclone Road. The property at 79 Bloomfield is resolved by stipulation. Accordingly, the parties' cross-motions for summary judgment are granted in part and denied in part.

## IV. CONCLUSION

For the reasons set forth herein,

**IT IS HEREBY ORDERED** that the Government's Motion for Recusal (Docket No. 86, Filed 4/27/98) is **DENIED.**

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Docket No. 55, Filed 07/28/97) is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' Motion is **GRANTED** with respect to the properties located at 285 West Hickory Grove, 82 Franklin Blvd., 352 South Saginaw, and 6300 Cyclone Road, and **DENIED** with respect to the property located at 79 Bloomfield.

**IT IS ORDERED** that Defendants' Cross–Motion for Partial Summary Judgment (Docket No. 58, Filed 07/30/97) is **GRANTED IN PART** and **DENIED IN PART.** The Government's Motion is **GRANTED** with respect to the property located at 79 Bloomfield, and **DENIED** with respect to the properties located at 285 West Hickory Grove, 82 Franklin Blvd., 352 South Saginaw, and 6300 Cyclone Road.

**IT IS ORDERED** that Judgment be entered this date in accordance with this order.

**IT IS SO ORDERED.**